# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                              **Case No. 8:15-CR-478-T-27MAP**

**JUAN CARLOS CABEZAS-BOLANOS**
_____/

### SENTENCING MEMORANDUM IN SUPPORT OF
### A MINOR ROLE REDUCTION AND/OR
### A DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. §3553(a)

COMES NOW, the Defendant, JUAN CARLOS CABEZAS-BOLANOS, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2 and 18 U.S.C. §3553(a), and hereby files this Sentencing Memorandum in support of his previously-lodged minor role objection and in further support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing as enumerated in 18 U.S.C. §3553(a)(2). As grounds in support thereof, Mr. Cabezas-Bolanos states the following:

### FACTUAL AND PROCEDURAL HISTORY

Mr. Cabezas-Bolanos is an Ecuadorian national who was born on February 26, 1977. PSR ¶36. He is one of seven children born to Alisibiades Cabezas and Carmen Bolanos Montano. *Id.* Mr. Cabezas-Bolanos' mother is presently 58 years old and his father died when Mr. Cabezas-Bolanos' was

approximately 8 years old. *Id.* Mr. Cabezas-Bolanos and his six siblings were born into poverty and lived an underprivileged existence, raised primarily by their mother who sold fish as a meager means of supporting the family. PSR ¶36. As described by Mr. Cabezas-Bolanos, he lived an unhappy, impoverished upbringing which forced him to leave school in the third grade to begin fishing as a means of attempting to help support his mother and six siblings. PSR ¶¶36, 46. As a result of leaving school at such an early age, Mr. Cabezas-Bolanos can neither read nor write today. PSR ¶46. Further, as a result of his limited education and the very scarce employment opportunities in Ecuador, Mr. Cabezas-Bolanos has struggled to support himself and his family as a fisherman where, at best, he earns $150.00 per month and a yearly salary of no more than $1,800.00. PSR ¶47.

As an adult living on this meager monthly fishing income, Mr. Cabezas-Bolanos has struggled to support his four minor children, who are 18, 12, 5, and 4 years old. PSR ¶38. Mr. Cabezas-Bolanos' difficult financial circumstances formed the backdrop for his involvement in the present case. Specifically, Mr. Cabezas-Bolanos became involved in the instant offense when he was approached by an individual who offered him $18,000.00 to participate as a crew member of a go-fast vessel which was to transport a load of cocaine from the coast of Colombia to coastal waters off of Central America. PSR ¶17. The

money Mr. Cabezas-Bolanos was earning as a fisherman in Ecuador was not sufficient to provide for his family and, therefore, he agreed to participate in the transportation operation, which he viewed as an once-in-a-lifetime financial opportunity. PSR ¶17. While on the go-fast vessel, Mr. Cabezas-Bolanos took direct orders from the Captain, Wilson Martin Marin Villavicencio. *Id.* Additionally, Mr. Cabezas-Bolanos had no knowledge as to the total quantity of cocaine they were transporting; he had no ownership stake in the cocaine; nor was he involved in the organization or planning of the transportation operation. *Id.* In exchange for his agreement to participate in the transportation operation, Mr. Cabezas-Bolanos received an upfront-payment of $500.00 with the promise of an additional $17,500.00 upon the successful completion of the transportation operation. *Id.* Mr. Cabezas-Bolanos' entire role in the transportation operation was to simply act as a "deckhand" or "mariner" to assist others in the transportation of the drugs from point A to point B by way of a go-fast vessel on the open seas.

Unfortunately for Mr. Cabezas-Bolanos and his family, on November 9, 2015, the go-fast vessel was spotted by the United States Coast Guard approximately 150 nautical miles south of the Guatemala / El Salvador border. PSR ¶11. The Coast Guard pursued them and, after bales of cocaine were jettisoned into the water, the go-fast vessel was apprehended and the 3-man

crew consisting of Mr. Cabezas-Bolanos, Obeian Lider Moreno Chila, and Wilson Martin Marin Villavicencio were apprehended. PSR ¶12. Subsequent investigation revealed that Mr. Marin Villavicencio was the Captain or Master of the go-fast vessel. PSR ¶13. Ultimately, three bales containing approximately 150 kilograms of cocaine was recovered from the ocean. *Id.*

The three crewmembers were brought to the Middle District of Florida and, on November 24, 2015, they were all charged by Indictment with Conspiracy to Possess with the Intent to Distribute 5 Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. PSR ¶¶1 - 3. Mr. Cabezas-Bolanos immediately began to cooperate with the Government and on January 25, 2016, he pleaded guilty pursuant to a written plea agreement. PSR ¶5. On February 10, 2016, this Court accepted Mr. Cabezas-Bolanos' guilty plea and adjudicated him guilty. PSR ¶9. The sentencing hearing in this cause is set for Monday, April 25, 2016, at 1:30 a.m. *Id*.

## GUIDELINE CALCULATIONS

Because Mr. Cabezas-Bolanos was involved in a cocaine trafficking conspiracy that involved at least 150 KG but less than 450 KG of cocaine, pursuant to U.S.S.G. §2D1.1(c)(2), his base offense level is suggested by the United States Probation Office to be a level 36. PSR ¶19. As a result of his

qualification for the "safety value" provision, Mr. Cabezas-Bolanos' base offense level is reduced by 2 levels, resulting in an adjusted offense level of 34. PSR ¶¶20, 24. With a 3-level reduction for "acceptance of responsibility," it is suggested that the total offense level is 31. PSR ¶¶26 -28. Mr. Cabezas-Bolanos has no prior arrests, convictions, or contacts with law enforcement and, as such, is a criminal history category I offender. PSR¶¶29 - 31. With a total offense level of 31 and a criminal history category I, Mr. Cabezas-Bolanos' advisory guideline imprisonment range is suggested to be 108 - 135 months (9 years - 11 years, 3 months). PSR ¶50. However, because of the 10-year minimum mandatory penalty, the guideline imprisonment range becomes 120 – 135 months (10 years – 11 years, 3 months). *Id*.

In the Presentence Investigation Report, Mr. Cabezas-Bolanos is not given any reduction for his role in the offense. PSR ¶22. He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding 3-level reduction in his base offense level, pursuant to U.S.S.G. §2D1.1(a)(5)(ii). *See* PSR Addendum.

## MINOR ROLE GUIDELINE OBJECTION

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction. Specifically, §3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in any criminal

activity." The determination whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *See* U.S.S.G. §3B1.2 App. N. 3(C). The Application notes provide guidance on distinguishing between a "minimal" and a "minor" participant. Specifically the application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.[1]

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." As part of the November 1, 2015, amendments to the guidelines, the Sentencing Commission has recently expressed the opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the

---

[1] It should be noted that prior to the November 1, 2015, amendments to the guidelines, the Sentencing Commission had observed that it is intended that a minimal participant downward adjustment would be applied infrequently. *See* U.S.S.G. §3B1.2, (Nov. 1, 2014) edition. The removal of this language by the Sentencing Commission from the application notes evidences the Sentencing Commission's intent that mitigating role reductions should be awarded more frequently and that a minimal participant reduction should no longer be awarded as infrequently, as initially suggested by the Sentencing Commission.

Commission had intended. *See* U.S.S.G. Appendix C, amend. 794.

In the present case, Mr. Cabezas-Bolanos arguably does not qualify for a minimal role reduction, but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty. He is less culpable than the captain or master of the go-fast vessel; he is less culpable than the individual who recruited him and others to participate in the smuggling operation; he is less culpable than the individuals organizing the transportation of the cocaine; he is less culpable than the buyers of the cocaine and the sellers of the cocaine; and he is less culpable than the drug dealers who will ultimately distribute the cocaine. At most, Mr. Cabezas-Bolanos is equally culpable with the third crewmember on the vessel, Obeian Lider Moreno-Chila, thus making him "substantially less culpable than the average participant."

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels." Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant

to §2D1.1(a)(5), the Court shall additionally reduce that base offense level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

Over the past 14 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under-applying or misapplying the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense reductions. Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640. By this 2002 amendment, the Sentencing Commission made it abundantly clear that low-level drug trafficking offenders involved with significantly large quantities of drugs (*i.e*., drug offenders with base offense levels that fall between a level 38 and a level 32 are eligible for mitigating role reductions notwithstanding the large quantity of drugs they may have

transported or stored for others).  As such, if a low-level participant in a drug trafficking conspiracy otherwise qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30, notwithstanding the fact that such individual was involved with significantly large quantities of drugs.  *Id*.  The legislative history of this amendment provides:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role).  *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment)*.
>
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2.  The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C, Amend 640 (*emphasis added*).

More recently, as noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after

conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise

eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id*.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id*. To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id*. Specifically, the Commission's November 1, 2015, factors direct a sentencing court to consider:

(i)   the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)  the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)  the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the

> defendant performed and the responsibility and discretion the defendant had in performing those acts; and

> (v)  the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, App. N. 3(C).

Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In the present case, the Commissions' clarifying amendment makes it abundantly clear that Mr. Cabezas-Bolanos should, at a minimum, receive a 2-level minor role reduction and by consequence a 3-level reduction in his base offense level pursuant to §2D1.1(a)(5)(ii). Factually, Mr. Cabezas-Bolanos was hired by a Colombian drug trafficking organization to act as a courier by transporting cocaine from Colombia to Central America while on-board a go-fast vessel. He was to receive financial compensation for transporting the drugs

and he had no ownership or proprietary interest in the drugs. To put it simply, he was being paid to perform the limited task of acting as a "deckhand" or "mariner" during the transportation of the drugs from one country to another by way of the open seas.

Mr. Cabezas-Bolanos' role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation or even the Captain or Master of the go-fast vessel; he was simply being paid along with other crewmembers to perform the task of assisting in the transporting of a vessel containing cocaine from the sellers to the buyers of the cocaine. He is, in fact, the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e.*, drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1, as well as in the November 2015, amendment to U.S.S.G. §3B1.2. It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organization are the specific type of offender the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that a large drug trafficking organization is involved in the distribution of cocaine in amounts larger than the amount of cocaine Mr.

Cabezas-Bolanos and his indicted co-defendants were apprehended with does not in any way preclude Mr. Cabezas-Bolanos from being eligible for a mitigating role reduction. As noted in the Commission's clarifying November 2015, amendment:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. *For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs* and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines."

USSG §3B1.2, App. 3(A) (emphasis added).

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, every factor would support Mr. Cabezas-Bolanos receiving a mitigating role reduction. As a simple courier or transporter of drugs:

(i) Mr. Cabezas-Bolanos had little or no degree of understanding of the scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

(ii) Mr. Cabezas-Bolanos had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

(iii)   Mr. Cabezas-Bolanos had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority.  He simply followed the directions of others, including direct orders from the Captain or Master of the go-fast vessel.

(iv)   The nature and extent of Mr. Cabezas-Bolanos' activity and participation was limited to his assistance with the transportation of packages of cocaine from Columbia to Central America; he had little or no responsibility or discretion in performing these transportation functions, and at all times during the transportation, he took direct orders from the Captain or Master of the vessel.

(v)   The only benefit Mr. Cabezas-Bolanos was to receive for his transportation function of a single load of cocaine was $18,000.00 which is especially minimal in light of the street value of the drugs he was transporting.

(vi)   Mr. Cabezas-Bolanos had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, assisting in the transportation of drugs).

Therefore, based upon the newly-created factors this Court is directed by the Sentencing Commission to specifically consider in determining when to apply a mitigating role reduction pursuant to U.S.S.G. §3B1.2, this Court must find that Mr. Cabezas-Bolanos qualifies for at least a 2-level minor role reduction and must, therefore, further adjust his base and total offense levels accordingly.

## THE ABROGATION OF THE REASONING IN *RODRIGUEZ DE VARON* AND SIMILAR CASES BY THE MITIGATING ROLE AMENDMENT TO THE GUIDELINES

Contrary to the United States Probation Office's and the Government's assertions in responding to Mr. Cabezas-Bolanos' minor role objection, the Eleventh Circuit opinion in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999) should no longer be used by this Court to preclude Mr. Cabezas-Bolanos from eligibility for a mitigating role reduction. In fact, it is clear from the legislative history of the November 1, 2015, amendment to the mitigating role provision that the Sentencing Commission has abrogated the reasoning in *Rodriguez De Varon*. *See* generally U.S.S.G. Appendix C, Amend. 794. As previously noted, the Sentencing Commission enacted the November 1, 2015, version of U.S.S.G. §3B1.2 (Mitigating Role) in response to an in-depth study designed to determine why the mitigating role reduction was not being applied as frequently as intended by the Sentencing Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.

*Id.*

As such, based on this study's findings, the Commission's clarifying

amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants, such as Mr. Cabezas-Bolanos, who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* As noted in the legislative history of the amendment, it was the specific intent of the Commission by way of the Amendment to address the Commission's observation "that courts often deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.* The Eleventh Circuit opinion in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999), although not specifically named by the Sentencing Commission, is one such case that has justified the denial of a mitigating role reduction where the evidence supports a finding that the defendant was "integral" or played an "important" or "essential" role in the transportation of the drugs he or she transported. *Rodriguez De Varon*, at 943 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs" justifying a denial of a mitigating role reduction).[2]

---

[2]"Couriers, like *De Varon*, who are convicted solely of the crime of importing drugs and whose base offense levels reflect only those drugs they personally brought into this

The rationale in the *Rodriguez De Varon* opinion, which has now been viewed unfavorably by the Sentencing Commission, has been used exclusively in this District to deny minor role reductions for transporters of large quantities of cocaine while on board a vessel subject to the jurisdiction of the United States. Despite the clear intent of the Sentencing Commission as evidenced by the November 1, 2015 amendment, the Government and the Probation Department are continuing to rely upon this now-flawed opinion from the Eleventh Circuit to justify a denial of a role reduction in the present case. For this Court to continue to follow the flawed reasoning in the *Rodriguez De Varon* opinion would be contrary to the intent of the Sentencing Commission and Congress and would defeat the clear intent of the Sentencing Commission to increase the rate of mitigating role reductions for otherwise-qualified defendants.

In the eyes of the Sentencing Commission, the *Rodriguez De Varon* opinion has been inappropriately focusing on whether the courier or transporter of drugs was important or essential to the importation offense in determining

country, are not eligible for a role reduction of any kind. It will always be clear error for a district court to grant a courier a role reduction in such circumstances. *See United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir. 1995)('It makes no sense to claim that one is a minor participant in one's own conduct'); *United States v. Burnett*, 66 F. 3d 137. 140 (7th Cir. 1995)('Where a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense'). This conclusion necessarily follows from the guidelines, from principles recognized in the Court's opinion in this case, and from common sense." 174 F.3d at 947 (Carnes, Concurring).

whether to apply a mitigating role reduction. It is the Commission's clear intent that a sentencing court not focus on whether the task performed was "integral" or "essential," but, instead, to focus on the task the defendant performed in relationship to the larger conspiracy in which they were involved. This fact is clearly evidenced by the fact that the application notes now provide that "a defendant who does not have a proprietary interest in the criminal activity and who is simply paid to perform tasks should be considered for an adjustment under this guideline." *See* U.S.S.G. §2B1.2, App. N. 3.

In response to the Commission's concerns, the Sentencing Commission's amendment to the guidelines was specifically designed to address the flawed approach taken by *Rodriguez De Varon* and other courts. As noted in the legislative history of the mitigating role amendment:

> Next, the amendment addresses cases in which the defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense. [Citations Omitted] [T]he Amendment revises the commentary to emphasize that the "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.

U.S.S.G. Appendix C, Amend. 794.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment." *Id.*

As evidenced by the enumerated factors created by the Commission, the Sentencing Commission is directing a sentencing court to examine the defendant's degree of understanding and participation in the larger drug trafficking conspiracy and not whether they were "essential" or "integral" to the crime for which they were being held responsible. Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant

may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

As such, it is clear from the legislative history of the clarifying amendment to U.S.S.G. §2B1.2 (Mitigating Role) that *Rodriguez De Varon* and similar cases have been abrogated by the Sentencing Commission and by Congress, who passed the amendment. While the legislative history to the amendment does not specifically reference *Rodriguez De Varon*, it does specifically reference *United States v. Skinner*, 690 F.3d 772, 783-784 (6th Cir. 2012); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); and *United States v. Carter,* 971 F.2d 597, 600 (10th Cir. 1992) - all of which rely upon the same flawed reasoning as in *Rodriguez De Varon,* that if a defendant plays an critical, integral, essential, important, or indispensable role in the criminal activity, they are ineligible for a mitigating role reduction. *See* U.S.S.G. Appendix C, Amend. 794. Clearly, this approach is no longer applicable and thus this Court should not look to the *Rodriguez De Varon* opinion but to the amended guideline and the factors enumerated by the Sentencing Commission for this Court's consideration.

Of further significance to the present case, in listing the factors this Court should consider when determining the applicability of a mitigating role reduction, the Commission did not reference the amount of drugs involved in the criminal activity. In contrast, in *Rodriguez De Varon*, the Eleventh Circuit relied heavily on the amount of drugs found in the courier's possession. As noted by the Court in *Rodriguez De Varon*, "because the amount of drugs in a courier's possession –whether very large or very small – may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943. Numerous courts in this District, following the guidance of *Rodriguez De Varon*, have previously denied a minor role reduction for defendants similarly-situated as Mr. Cabezas-Bolanos, based solely upon the large quantity of drugs found on the their vessel or in the water after the drugs had been thrown overboard by the couriers.

In 1999, the Eleventh Circuit found support for the "quantity-of-drugs" factor by pointing to an example found within an Application Note to the then-1999 version of the §2B1.2 guideline. *Id*. However, subsequent to the issuance of the *Rodriguez De Varon* opinion, the illustrative example related to the quantity of drugs in the application note was deleted from the guidelines by the Sentencing Commission in the November 1, 2001, version of the guidelines.

*See* Nov. 1, 2001 §2B1.2 guideline, App. Notes generally. Additionally, as noted above, as part of the November 1, 2002, amendments to the guidelines, U.S.S.G. §2D1.1 was drastically amended by the Sentencing Commission to provide a reduction in a drug trafficking defendant's base offense, if such base offense level as a result of the large quantity of drugs involved placed the defendant at an offense level as high as a level 38 and as low as a level 32, if the defendant also qualified for a mitigating role reduction pursuant to U.S.S.G. §3B1.2. *See* U.S.S.G. Appx. C, Nov. 1, 2002 Amend. 640. Since the 2002 amendment to §2D1.1 a mitigating role defendant who was involved with a quantity of drugs placing them at the highest possible offense level under the drug quantity table, is eligible for a 4-level base offense reduction. Such eligibility under the guidelines makes clear that the Sentencing Commission, at least since 2002, has always envisioned the eligibility for a mitigating role reduction for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability, notwithstanding that they may have been involved with the trafficking of significant quantity of drugs. As such, contrary to the Eleventh Circuit pronouncement in *Rodriquez De Varon* that the quantity of drugs alone may be determinative, it is clear that the Sentencing Commission has intended otherwise.

The removal of the illustrative "quantity of the drugs" example in 2001 and the addition of U.S.S.G. §2D1.1(a)(5) in 2002 by the Sentencing Commission and Congress clearly evidences the Commission's intent that the amount of drugs involved should not be a determinative factor and in fact is irrelevant to the mitigating role analysis. In fact, this intent is further exemplified by the present version of the mitigating role provision, which lists five factors for a court's consideration, none of which focuses on the amount of drugs transported and certainly none of which suggests that in an extreme case the amount of drugs could be determinative.

Therefore, disregarding the now abrogated Rodriguez De Varon opinion, and looking solely to the November 2015 version on U.S.S.G. §3B1.2, Mr. Cabezas-Bolanos should, at a minimum, receive a 2-level minor role reduction and a corresponding 3-level U.S.S.G. §2D1.1(a)(5)(ii) adjustment in his base offense level. With these two corrections, Mr. Cabezas-Bolanos' properly-calculated total offense level is 26. With a total offense level of 26 and a criminal history category I, Mr. Cabezas-Bolanos' advisory guideline imprisonment range is 63 - 78 months.[3]

---

[3]It is anticipated that prior to sentencing the Government will being filing a "substantial assistance" motion that will both eliminate the 10-year minimum mandatory penalty and authorize this Court to depart downward in Mr. Cabezas-Bolanos' advisory guideline imprisonment range. A 2-level downward departure pursuant to U.S.S.G. §5K1.1 would result in an advisory range of 51 - 63 months.

## REQUEST FOR A REASONABLE SENTENCE

In light of the mitigating history and characteristics of Mr. Cabezas-Bolanos, as well as the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that a sentence of 60 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a).[4]  Mr. Cabezas-Bolanos is a 39-year-old, impoverished Ecuadorian national who is the primary financial supporter for his four minor children.  As a child, Mr. Cabezas-Bolanos and his six siblings were raised by a single mother suffering from extreme poverty.  He can neither read nor write and he has worked since the third grade as a fisherman, most recently earning no more than $150.00 a month or $1,800.00 a year. Additionally, Mr. Cabezas-Bolanos has no prior criminal history or contacts with law enforcement; he became involved in the present, non-violent activity as a means to supplement his meager fisherman's income and to attempt to remove his children from the poverty he has endured his entire life.  In exchange for the promise of $18,000.00 - which is more than 10 times greater than the amount of

---

[4] After granting a 2-level minor role reduction, the corresponding 3-level U.S.S.G. §2D1.1(5)(ii) base offense level reduction, and a 2-level U.S.S.G. §5K1.1 reduction, a 60-month sentence would fall at the upper end of Mr. Cabezas-Bolanos' otherwise advisory guideline imprisonment range of 51 - 63 months.

money he could make in a year as a fisherman - Mr. Cabezas-Bolanos agreed to act as a "deckhand" or "mariner" on a go-fast vessel loaded with approximately 150 KG of cocaine while the vessel transported the cocaine from Colombia to Central America. As noted above, his role in this large criminal drug trafficking conspiracy was minor in comparison to other participants in the drug trafficking operation.

While Mr. Cabezas-Bolanos' offense is non-violent in nature, it cannot be disputed that he was involved in a crime that involved the attempted transport of a large quantity of cocaine, which would support the imposition of a significant term of incarceration. However, a sentence greater than 60 months' imprisonment, which is at the upper end of his otherwise advisory guideline imprisonment range, to be followed by a 5-year term of supervised release, would be "greater than necessary" to address the seriousness of Mr. Cabezas-Bolanos' criminal behavior, especially in light of his history and characteristics, his motivation for becoming involved in this unlawful activity, his mitigating role in the offense, and his cooperative efforts.

Given the significant quantity of cocaine involved in the offense, it cannot be disputed that a term of incarceration is necessary to both specifically deter Mr. Cabezas-Bolanos and others from future similar criminal conduct. It is simply suggested that a 60-month term of federal incarceration to be followed

by a 5-year term of supervised release will be equally efficient as any term of imprisonment greater than 60 months. This is true, especially in light of the fact that Mr. Cabezas-Bolanos has never received a prior term of imprisonment and, in fact, has never previously had any contacts with law enforcement in this country or in his home country.

Mr. Cabezas-Bolanos is mindful that he has committed a serious crime and that he needs to be punished. A term of imprisonment of 60 months to be followed by a 5-year term of supervised release would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Cabezas-Bolanos' mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish him for his non-violent, although very serious criminal activities. At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Cabezas-Bolanos as an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment.

WHEREFORE, the Defendant, JUAN CARLOS CABEZAS-BOLANOS, respectfully moves this Honorable Court to sustain his minor role objection, to grant the Government's "substantial assistance" motion, and based

upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 60 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 19th day of April, 2016.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Adam B. Allen*
Adam B. Allen
Florida Bar No.0998184
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of April, 2016, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA James Zoll.

*/s/ Adam B. Allen*
Adam B. Allen
Assistant Federal Defender